INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY V.
WILLIAM STEPHENSON.

Decided December 1, 1899.

### 1.  Waiver of Error as to New Trial.

Defendant's motion for new trial below was overruled,—one of its grounds being an error in the use of the word "defendant" for "plaintiff" in one clause of the charge.  Afterwards plaintiff in open court offered to allow defendant a new trial because of that error, and the court offered to grant defendant's motionfl if it were renewed.  Defendant did not renew its motion, but on appeal waived that error.  Held, that defendant's failure to take the offered new trial was not a waiver of the other grounds assigned in its motion therefor.

### 2.  Railway Company—Master and Servant—Assumed Risk.

A railway company had constructed beside its track a mail crane, the arm of which, when intended for use, came within ten inches of passing engines,—the usual and safe distance in such cases being about twenty inches.  The custom in using such cranes was for the arm to be extended just in advance of the passage of a mail train, and withdraw it when it had passed, but in this case it had not been so withdrawn, and the engineer of a passing freight train, in putting his head out of the cab to observe his engine and look for signals, was injured by a contact with the crane. Held, that the danger from such crane was not an assumed risk, and that the engineer was entitled to recover for the injury.

### 3.  Charge of Court—Care and Negligence.

In an action by a railway engineer for personal injuries occurring in the service, a charge that "it is the duty of every person to use his senses to learn what is going on around him; and the more dangerous a position in which a person is placed, the more care he should use to protect himself from injury," without further explanation, is properly refused as misleading.

### 4.  Assignments of Error—Statement Required.

Assignments of error containing no statement thereunder, as required by the rules, will not be considered.

APPEAL from Anderson.  Tried below before Hon. W. H. GILL.

*N. A. Stedman* and *Gould & Ewing,* for appellant.

*Campbell & McMeans,* for appellee.

GARRETT, CHIEF JUSTICE.—This action was brought by William Stephenson against the International & Great Northern Railroad Company to recover damages for personal injuries received by the plaintiff while he was in the employment of the company as a locomotive engineer. Plaintiff was struck by a mail crane which he alleged was negligently built too near the railroad track.  The defenses were that the danger of contact with the mail crane was an assumed risk, and that the plaintiff was also guilty of contributory negligence in not exercising due care to prevent himself from being struck.  There was a trial by jury which resulted in a verdict and judgment in favor of the plaintiff for the sum of $5000.

The defendant's motion for a new trial, among others, assigned as a ground therefor error in the following portion of the court's charge,

to wit: "And that the unsafe condition of the crane (if any) was not known to defendant and could not have been known by the exercise of ordinary care, you will find for the plaintiff and assess his damages," etc. The error being the use of the word "defendant" instead of "plaintiff." The court overruled the motion, under the impression that the use of the word "defendant" was a clerical mistake of counsel in preparing the motion. Afterwards the plaintiff, having discovered the error, moved for a new trial, and offered to allow the defendant a new trial, to which the defendant objected. The court overruled the plaintiff's motion, because the error was one of which the plaintiff could not complain, but offered to grant the defendant's motion if defendant's counsel requested it, but counsel said that he preferred that the case should go up, and the court let its judgment overruling defendant's motion stand. In presenting the case on appeal the defendant has waived the error. But the plaintiff contends that, inasmuch as the defendant declined to accept plaintiff's tender of a new trial, all of the grounds now urged for a reversal of the judgment of the court below have been waived. We do not concur in this view. The court below, as it might have done, did not set aside its order overruling the defendant's motion for a new trial, but let it stand. The facts disclosed by the bill of exceptions do not amount to a withdrawal of the motion or a waiver of all error by the defendant.

Plaintiff, at the time his injuries were received, was a locomotive engineer in the employment of defendant, and was running a freight train on its line between Willis and Houston. At Westfield, a station on the line, the plaintiff put his head out of the side window in the cab of his engine to see if the main pin fastening the piston rod to the driving wheel of the engine was running too hot to go on to the next station. It was explained that the friction caused by the turning of the pin in its socket as the wheel revolved heated the pin so that it was necessary to watch it carefully. Plaintiff related the circumstances of the accident as follows: "When we approached Westfield, which is a side track or small station between Willis and Houston, and when within a proper distance, I blew the whistle for the station, and not knowing whether we had any freight to unload or other work to do there, I protruded my head through the side window and looked toward the rear end for a signal. As I did not at once receive a signal from the conductor, I drew my head in, and grasping the whistle lever, I blew for signals, and again protruded my head through the window to look for signals from the conductor as to whether we should stop or go ahead. At this time we were running at the rate of fifteen or twenty miles per hour. After looking back a little while I got the 'high ball' signal from the conductor, by which he directed that I should go on through without stopping. I then drew in my head and answered the signal by two short blasts of the whistle; then I looked at the clock on my engine to see if we had time to get to Aldine, six miles away, to meet and let the passenger train pass by at that point, calculated the time, and saw that we could make it in safety; then I thought of the 'main pin,' and looked out of the side window to

see if it was running too hot to go on to Aldine, and just as I protruded my head out of the window to look at the pin, my head came in contact with the extended arm of a mail crane."

A mail crane is an upright post planted close to the railroad track with an arm which, when not in use, hangs by the side of the post, but when in use is extended horizontally toward the track, and from which a suspended mail sack may be taken while the train is in motion by means of an iron hook or "mail catcher" attached to the door of the car and operated by the mail clerk. Mail sacks are thus suspended, and the arm usually extended only for about ten minutes before a mail train passes. The arm, when extended, is of the height of the side window of the cab of an engine. There were mail cranes at several stations on the line of defendant's railroad. At all the other stations except Westfield the distance of the nearest end of the arm of the crane from the cab of the engine was seventeen inches and nineteen inches, but at Westfield the arm extended to within ten inches of the cab window. A mail sack can be caught by the "mail catcher" at a distance of twenty-one inches from the side of the cab. A crane extending to within seventeen inches of the cab is safe, and the engineer can look out of the cab window at the machinery of the engine or for signals with the crane at such distance without danger of being struck by the arm; but the arm is dangerous if it extends to within ten inches of the cab, and is liable to strike the head of the engineer if he puts it out of the window. The defendant was negligent in placing the crane so that the arm came too near to the window of the cab. It was proper, customary, and necessary for the plaintiff to put his head out of the window of the cab to watch the machinery of the engine and to look out for signals.

Plaintiff knew of the presence of mail cranes at the several stations on the road, but freight trains did not carry mail, and he was not expecting or looking out for any danger from the crane, and, as above stated, there would have been none if the arm had not extended too near to the track. He did not see or look for the crane. If he had looked he could not have told within a reasonable distance from the crane that the arm extended too near the track. He did not know that the crane was too near the track, and the danger was not obvious. He was injured by the negligence of the defendant, without fault on his part.

We are of the opinion that the verdict of the jury is fully supported by the evidence upon both of the issues involved in the case. The plaintiff could not be held guilty of contributory negligence, for he was engaged in the discharge of his duties in the usual manner and did not unnecessarily expose himself to danger. It was clearly shown by the evidence that the mail crane, if it had been properly constructed, was not such a structure that its presence by the side of the track would have been dangerous. It was only dangerous because it was negligently put too near the track. The plaintiff had the right to assume that the defendant had performed its duty in putting up the crane. He did not know of its dangerous proximity to the track, and could not have known

it by the exercise of ordinary care.   Such being the case, he did not assume the risk.

The court fully charged upon both the issues of contributory negligence and assumed risk, and there was no error in refusing to give the special instructions requested by the defendant and set out in the second and third assignments of error.   By the fourth assignment appellant complains of the refusal of a special instruction that it is the duty of every person to use his senses to learn what is going on around him; and the more dangerous a position in which a person is placed, the more care should he use to protect himself from injury.   This instruction would have been misleading to the jury, for, without explanation, the jury might have inferred that a higher degree of care than ordinary care would be required of the plaintiff, while the same degree of care is always required, though under some circumstances ordinary care would be greater than the same degree of care would be under other circumstances. The instruction was properly refused.   The special instruction embodied in the fifth assignment of error was sufficiently covered in the general charge of the court, and its refusal was not error.

The objection of appellee to the consideration of the sixth, seventh, eighth, ninth, tenth, and eleventh assignments of error, that they contain no statement thereunder as required by the rules, is well taken, and we decline to consider them.   The judgment of the court below will be affirmed.

*Affirmed.*

GILL, Associate Justice, did not sit in this case.

Writ of error refused